HARRISON et al. v. BEATY et al.—137 S. W. (2d) 946.

Middle Section. July 22, 1939.

Petition for Rehearing denied August 12, 1939.

Petition for Certiorari denied by Supreme Court, March 8, 1940.

14

A. R. Hogue, of Jamestown, for appellants S. H. Beaty and Collier Stephens.

Ward R. Case and J. T. Wheeler, both of Jamestown, for appellees G. E. Harrison et al.

CROWNOVER, J. This is an ejectment suit brought by G. E. Harrison, Hugo Gernt and Arthur Gernt against S. H. Beaty and his tenant, Collier Stephens, to recover possession of two tracts of land (less certain exclusions) in Fentress County, to enjoin trespass, and for a decree for the value of timber cut and removed, and to have the defendant Beaty's title declared fraudulent and void and cancelled as a cloud upon their title.

The complainants allege that they are in the actual possession of said land under M. V. Huddleston grant No. 13,271 and other assurances of title, and have had adverse possession of said lands for more than seven years. They deraigned title through connected conveyances from M. V. Huddleston, who obtained a grant from the State of Tennessee for 4,024 acres, dated June 26, 1889, grant No. 13,271. And they allege that defendant Beaty and his tenant, Collier Stephens, have taken possession of a part of said lands and are making a fraudulent claim thereto, and are cutting timber and trespassing on it.

The defendants answered and denied that the complainants had title to the lands described in the bill and pleaded seven years' adverse possession. The defendant Beaty claimed title to said lands under a chain of title from grant No. 4241, called the "Peter Campbell Grant," containing 5,000 acres, dated January 5, 1835. They further pleaded a superior outstanding title to the second tract under a deed from Bruno Gernt to S. H. Beaty, dated May 25, 1911. They also pleaded champerty.

Later defendant Beaty amended his answer to disclaim any interest in said tract of land except these two lots or parcels described in the answer.

The complainants dismissed their bill as to the second tract described in the defendants' answer, which is the land on which Beaty lives.

The tract in controversy in this suit is, therefore, tract No. 1, which is described in the defendants' answer.

The maps filed do not show the locations of the two grants or the amount of the interlap further than that both grants interlap and cover the land in controversy. There is no contention that each grant does not cover the land in controversy.

The cause was tried on depositions, and the Chancellor found and decreed that the complainants were the owners in fee of the lands sued for in the bill, except that portion thereof described in the bill as the second tract, as to which the bill was dismissed by the complainants on the hearing; and further held that the defendants' claims and titles were fraudulent and void.

He ordered that writ of possession issue, and ordered a reference to

ascertain the amount of damages the complainants should recover, if any, by reason of the cutting and removal of timber from said lands.

The defendants excepted to said decree and appealed to this Court and have assigned errors, which are, in substance, as follows:

(1) The Chancellor erred in finding and decreeing that the complainants had title to the lands involved by adverse possession.

(2) The Chancellor erred in holding and decreeing that the defendant Beaty's possession on tract No. 2 did not operate to give him title to tract No. 1 by adverse possession.

(3) The Chancellor erred in permitting the complainants to amend their bill so as to exclude tract No. 2.

(4) The Chancellor erred in failing to hold that G. E. Harrison had no interest in said lands, and in not dismissing his suit.

(5) The Chancellor erred in not holding that the deed from G. E. Harrison to Hugo and Arthur Gernt was champertous.

(6) The Chancellor erred in not dismissing the complainants' suit for nonpayment of taxes before the bringing of the suit.

1. We think the first assignment of error, to the effect that the Chancellor erred in decreeing that the complainants had title to the land by adverse possession, should be sustained.

It is admitted that the Campbell grant No. 4241 for 5,000 acres, under which the defendant Beaty claims, covers his possessions and the land in controversy. His grant is the oldest, hence he has the best title unless the complainants have perfected their title by adverse possession under the junior grant.

The evidence about adverse possession is vague and indefinite. The parties have not made and filed maps showing the location of the two grants and the interlap of the grants, nor have they shown on the maps filed the locations and names of the various possessions claimed to have been set up by complainants on the land in controversy. Counsel for complainants stated in their brief:

"Both the complainants and the defendants claim to have had adverse possession of the land in controversy, or of the boundaries claimed by them. The evidence about the various improvements, houses and enclosures, is fragmentary and scattered in the record, and putting it together in intelligible form is rather a difficult task; like trying to put together one of the cut-up picture puzzles children and sometimes grown-ups played with some few years ago; but it can be done, and when done, fairly complete pictures are presented."

We have carefully examined the record and find that it is not possible for us to determine with any degree of accuracy the location and extent of complainants' possessions.

It is shown that defendant Beaty has maintained a house and enclosures where he now lives on the Peter Campbell grant continuously since 1927, and this gives him constructive possession of the whole Campbell grant including the land in controversy, as the pos-

session is on the interlap, unless the complainants perfected their title by adverse possession under the junior grant before Beaty took possession in 1927.

If the possession be mixed or concurrent, the legal seizin is in him who has the legal title. Smith v. Cross, 125 Tenn., 159, 140 S. W., 1060; Welcker v. Staples, 88 Tenn., 49, 12 S. W., 340, 17 Am. St. Rep. 869.

But it is insisted that defendant Beaty's house and possessions are also located within the Thomas Turner 500 acres grant No. 11,405, conveyed to him by Bruno Gernt on May 25, 1911, a grant that interlaps to some extent with the Campbell grant, and therefore he cannot claim possession under the Campbell grant. We think there is nothing in this contention, as there is nothing in the record to show that the title under the Turner grant is superior to the Campbell grant. Beaty did not take possession until 1927, long after he acquired both titles. Where one has title to property he may purchase an outstanding claim without interference with his possession or title. Roysdon v. Terry, 4 Tenn. App., 638; McCarthy v. Holt, 5 Tenn. App., 447.

The fact that complainants and their tenants may have had possession of a few acres (a little clearing and a house), claiming under a junior grant, does not give them constructive possession of the whole tract in controversy where the defendant is maintaining a possession on the interlap at the same time claiming under a senior grant.

Where one is in possession under a junior grant, and the elder grantee enters and constructs enclosures before the title is perfected by adverse possession, such entry gives the elder grantee legal seizin, and the constructive possession is in the one holding the legal title. Creech v. Jones, 5 Sneed, 631, 632; Norvell v. Gray's Lessee, 1 Swan, 96.

Now the question is whether complainants by themselves and their tenants perfected their title by adverse possession before Shade Beaty took possession and lived in the house (where he now lives) within the interlap in 1927. We have carefully examined the record, and as above stated there is much confusion and indefiniteness as to the possessions, not only as to their locations, but also as to under whom the possessions were held and whether actually adversely to any one.

Possession of a tenant is circumscribed by the boundaries set out in the lease contract. Beaty v. Owens, 6 Tenn. App., 154; Ross v. Cobb, 9 Yerg., 463; Massengill v. Boyles, 11 Humph., 112.

But if the boundaries are not circumscribed and limited in the lease, they will extend to the boundaries of the lessor. Ross v. Cobb, 9 Yerg., 463, 471.

The doctrine of adverse possession is to be strictly construed,

and must be made out by clear and positive proof and not by inference; every presumption being in favor of the possession in subordination to the title of the true owner. Westmoreland v. Farmer, 7 Tenn. App., 385; Drewery v. Nelms, 132 Tenn., 254, 177 S. W., 946; Coal & Iron Co. v. Coppinger, 95 Tenn., 26, 32 S. W., 465.

The several enclosures upon which complainants claim to have perfected their title to the land in controversy by adverse possession are as follows:

(1) The Elias Bowden or Banks Gawney possession consisted of a dwelling and small clearing enclosed. It is insisted that Elias Bowden first cleared the land and held under Huddleston and his successors in title, from 1899, and that Banks Gawney succeeded him, lived on the Jasper Adkins tract, but cleared and cultivated for sixteen years a little strip of land (110 steps by 45 steps) across the line on the Huddleston tract; that he rented it from some man by the name of Criss, as he thought, but he is not certain from whom Criss obtained authority to lease it. At another time he leased from Harrison and held it 10 or 12 years, but Harrison did not buy the land until 1921, and this latter possession did not ripen into a title, as Shade Beaty began his possession on the same tract in 1927. It is not proved that any of these tenants were holding adverse possession for the complainants and their predecessors in title. Some witness testified that the tenants were holding under Criss, Neidenhaus, and J. T. Wheeler, but it is not shown by what authority these men leased the little possessions, or that any of the tenants held it adversely to anybody. Adverse possession was not proved by any of the witnesses. The possessions were not definitely located and the evidence is vague and confusing.

(2) The evidence about Jim Beaty's house and enclosure has about the same weight. A witness or two testified that Jim Beaty had the possession for 20 or 25 years and his father for 30 or 40 years, but it is not shown under whom they claimed, except that one claimed under George Carr who claimed under J. T. Wheeler, but didn't know under whom the others claimed. It is not shown that these parties held adverse possession, or the title holders claimed adverse possession.

(3) The evidence about the Jerry Gawney possession is in the same condition. It is insisted that he has held possession under Harrison for eleven years, but Harrison bought the tract in 1921, hence this possession had not ripened into a title, as Shade Beaty took possession in 1927. Jerry Gawney began his possession about 1925.

 The other possessions set up by complainants did not perfect their title, and it is unnecessary to discuss them. None of the complainants testified in the case as to their leases or possessions, and their witnesses did not establish adverse possession as required by law. They must prove that they had seven years' open, notorious,

continuous, hostile adverse possession, claiming it as their own against the true owner and the world, and the burden was on them to prove it by clear and convincing testimony. Westmoreland v. Farmer, 7 Tenn. App., 385. But not a single witness testified that the complainants' possession was adverse to anybody or under a claim of right, or to facts showing that the possession was adverse.

Some questions are raised about defendant Beaty's chain of title to the Campbell Grant No. 4241, but we think they do not affect the defendant's claim for the following reasons:

█ █ (a) There is a tax deed in the chain of title to Jas. A. Allred, dated September 6, 1895, purporting to be a sale for taxes for the year 1892, and it is not shown to whom the land was assessed. The deed recites that the tax case was against Peter Campbell and others, but does not show that he was before the court. No supporting record was offered in evidence, and no deed from Peter Campbell is shown, and it is not shown whether Peter Campbell was living or dead. These objections are not good. No objection was made to the introduction of the deed in evidence. The recitals in such conveyance executed by any public officer (the Clerk and Master) in his official capacity are prima facie evidence of the facts in such instrument recited, in so far as such facts relate to the execution of the power of such office or trust. Code, secs. 9745, 9746; Richardson v. Schwoon, 3 Tenn. App., 512; King v. Richardson, 7 Tenn. App., 535, 554.

"A clerk and master's deed of conveyance of land, even where made before the enactment of the statute, may, by proper recitals, show prima facie authority in said clerk to make the deed, and when such authority appears, any one questioning such authority is required to file a certified copy of the record, in order to overturn the prima facie case made by the deed. Hill v. Moore, 121 Tenn. (13 Cates), 182, 113 S. W., 788; Camp v. Riddle, 128 Tenn. (1 Thomp.), 294, 160 S. W., 844, Ann. Cas., 1915C, 145." 6 Williams' Code, note under section 9746.

█ █ (b) Another deed, from Shellito to Seals, in Beaty's chain of title, is not shown to have been acknowledged or registered. This was not necessary. It was read in evidence without objection. Ordinarily, adverse possession, to be effective in acquiring title, must be under a registered assurance of title duly probated and authenticated. Byrd v. Phillips, 20 Tenn., 14, 111 S. W., 1109. But adverse possession under such deeds is good as a defensive title. Deeds not acknowledged or registered are assurances of title. Stewart's Lessee v. Harris, 32 Tenn. (2 Swan), 656; Thurston v. University of North Carolina, 72 Tenn. (4 Lea), 513, 520.

█ Informal muniments of title, though not conveying any estate, are assurances of title for creation of constructive possession. Shannon's Ann. Code, note 172 under section 4456; Sedgwick &

Wait on Trial of Title to Land, secs. 761, 766, 772, 773, 780; 1 Am. & Eng. Ency. of Law (2 Ed.), 862-868.

Registration is not necessary to create a defensive title. Shannon's Ann. Code, note 104 under section 4456; Kittel v. Steger, 121 Tenn., 400, 412, 117 S. W., 500.

The holding in Patrick v. Goolsby, 158 Tenn., 162, 11 S. W. (2d), 677, does not affect this case, as Beaty went into possession of the interlap.

(c) It is insisted that deeds from John A. Shellito to H. Outram Seals, and from the Sheriff to S. H. Beaty, in Beaty's chain of title, exclude Beaty's possession (where he now lives), and for this reason Beaty's possession is not under the Campbell grant. The deeds, after describing the land granted, stated, "excepting from this boundary the lands of S. H. Beaty," and sixteen or seventeen others, without further describing or identifying the tracts excepted. There is nothing in the evidence to show that the possession occupied by S. H. Beaty was the one intended to be excepted. The record shows the defendant Beaty had other tracts, and it may have been those tracts that were excluded.

Without more the exception was void for want of description and S. H. Beaty took title to the whole tract conveyed.

"An exception should describe the property with sufficient certainty. Uncertainty or vagueness of description renders a reservation void unless there is something in the exception, deed, or evidence whereby it can be made sufficiently certain. . . . The fact that an exception is void for uncertainty has the effect merely to make the conveyance operative as to the whole tract." 18 C. J., 348, sec. 354; Kobbe v. Harriman Land Co., 139 Tenn., 251, 201 S. W., 762.

Hence, the first, second, and fourth assignments of errors are sustained.

2. The third assignment, that the Chancellor erred in permitting complainants to amend their bill so as to exclude tract No. 2, and dismiss the bill as to this land, is not well made. As a general rule, a suit may be dismissed without prejudice where the case has not been disposed of on its merits. Smith v. McConnell, 156 Tenn., 523, 3 S. W. (2d), 161; Gibson's Suits in Chancery (4 Ed.), sec. 570.

3. Having held that the defendant had the legal title and constructive possession of all the land in controversy except the little clearings actually enclosed on the date (March 7, 1932) when Harrison sold to the Gernts, we hold that the deed was champertous as to the land not actually enclosed. Code, sec. 7827; Gernt v. Floyd, 131 Tenn., 119, 174 S. W., 267.

But this question becomes immaterial, as the deed from the Coal Company to Harrison, dated January 15, 1921, is not champertous, as Shade Beaty was not in the actual possession at that time.

If the title is shown to be in either complainant he would be entitled to recover. Key v. Snow, 90 Tenn., 663, 18 S. W., 251; Gibson's Suits in Chancery (4 Ed.), sec. 542.

4. We think there is nothing in the assignment that the bill should be dismissed because complainants had not paid the taxes on this land, first, because the question was not raised in the pleadings; second, it appears that all taxes were paid before the suit was brought except the 1936 taxes, which were paid on February 2, 1937, therefore the statute does not apply to this suit; and, third, the question has become immaterial.

Several of the assignments of errors having been sustained, it results that the decree of the lower court must be reversed and the suit dismissed.

While it appears that the complainants claim possession of, and did have actual possession of, certain little enclosures on the land described in their bill, such as the Elias Bowden or Banks Gawney possessions, the Jim Beaty and the Jerry Gawney possessions, we think that the evidence is not sufficient to establish title to said little enclosures by adverse possession, and there are no sufficient descriptions shown for us to pass a decree in the complainants' favor.

It results that the bill will be dismissed, and the costs of the cause including the costs of the appeal are decreed against the complainants and the sureties on their prosecution bond.

Faw, P. J., and Felts, J., concur.

## On Petition for Rehearing.

CROWNOVER, J. The case is again before us on a petition for a rehearing and for a different findings of facts, in which it is insisted that the Court erred in failing to understand the locations of the possessions and the maps, and in holding that complainants had failed to establish title by adverse possession, and in dismissing the bill.

The petitioners have again gone over and discussed all the questions previously raised, but have added nothing new. However, we have again gone over each question raised, but we must adhere to our former opinion.

We think the parties have entirely failed to prove adverse possession as required by law; and we repeat that the evidence on that subject is vague and confusing, and the possessions are not located on the maps with any precision. For instance, they strongly insist that they established title by adverse possession under the Jim Beaty possession. Fate York testified that that possession is where Jerry Gawney lived, but counsel say that he is mistaken and had the possessions confused. Shade Beaty says this possession was inside the tract sold by Choate and Wilson to Jess Roberts. What connection

this tract had with the land in controversy is not explained, and his testimony on this point doesn't seem to be denied. If the Jim Beaty possession was on another tract sold off, and not a part of the land in controversy, it cannot help complainants.

But as stated in our original opinion it is not shown under whom they held possession, and whether the people who rented to them had any authority to rent the land.

We do not think complainants' evidence arises to the dignity of evidence on adverse possession. Simply saying one "held" under somebody or "claimed" under somebody is not evidence of adverse possession. They must go further and show that the possession was actual, visible, continuous, exclusive, hostile, and notorious, and under a claim of right. Whenever any of these elements is lacking, no title by adverse possession can ripen. 2 C. J., 50, sec. 1; 3 Thompson on Real Property, 630, sec. 2515.

The possession must be hostile, with a claim of right and an intention to hold adversely, and must be exclusive. 11 Michie's Tenn. Dig. (2 Ed.), 154, secs. 219-223; 3 Thompson on Real Property, 640, secs. 2521 to 2524. None of these elements were proven. The burden of proof was on complainants, and evidence of adverse possession is strictly construed, every presumption being in favor of the true owner. Buchanan v. Nixon, 163 Tenn. 364, 43 S. W. (2d) 380, 80 A. L. R., 151.

There is only one question that gave us any concern, and that is, as to Beaty's disclaimer in his answer, but upon a reexamination of the record we find that Beaty in his answer pleaded adverse possession, alleging that he was in possession for a period of more than seven years before the filing of this bill against them: "The boundaries of land claimed by the defendants and which they have been in possession for more than seven years and which possession has been exclusive adverse, open and notorious, to the full extent of the boundaries covered by a grant #4241 to Peter Campbell, dated 5th day of Jan. 1835, and a deed from Bruno Gernt to S. H. Beaty, dated on the ——— day of 1911. A description of boundaries as follows:

"First tract: On the south by the south boundary line of the Richard Winningham tract, on the west by the Alvin C. York highway, on the north, by the north boundary line of the Richard Winningham tract, on the east, by the east boundary line of the Richard Winningham tract.

"Second tract: Starting at an oak near the mouth of Westmoreland branch; thence west 275 poles to a chestnut; thence south 320 poles to a hickory; thence east 275 poles to a white oak; thence north 320 poles to the beginning, said tract lying partly in the Huddleston grant and partly in the Thomas Turner Grant, which grants overlap on the southern part of the Thomas Turner tract, this tract being fully de-

scribed in the deed from Bruno Gernt aforesaid and recorded in book ——— page ——— of the Register's Office of Fentress County."

He further alleges in his answer that: "These defendants deny that they are in possession of any other lands described in complainants' bill except that described in the two tracts above set out, or that they are claiming title to any other land except as to these two tracts, and they here and now disclaim to any and all described in complainants' bill with the exception of the two tracts hereinabove described."

They later amended their answer and disclaimed any and all lands south of the south line of the Peter Campbell grant 4241.

Many of the calls of said above described tracts are confusing, and there is no evidence in the record as to the extent of the boundaries of the above two tracts, except, that they are within the Peter Campbell grant No. 4241, and cover the land in controversy.

It is clear that Beaty was claiming to the extent of the boundaries of the Peter Campbell grant, and was, when he filed the answer, claiming the two tracts described in the answer, but it doesn't appear whether they covered all the possessions. Hence, there is nothing in the question of disclaimer that can help the complainants, as they must rely on the strength of their own title. They must put their finger on some part of the Campbell grant disclaimed by Beaty in his answer, but it is not shown in this record.

It results that the petition for a rehearing is denied.

Faw, P. J., and Felts, J., concur.