BRANSTETTER v. POYNTER—222 S. W. (2d) 214.

Eastern Section.   April 26, 1949.

Petition for Certiorari denied by Supreme Court, July 9, 1949.

J. H. McCartt, of Wartburg, for appellant.

J. W. Stone, of Harriman, for appellee.

HOWARD, J. Complainant below, W. E. Branstetter, filed this bill against Winniedell Poynter, as defendant, to settle a dispute over the title to three tracts of land lying in Morgan County to which each of the litigants holds a deed from the same grantor.

The Chancellor, after hearing the case on oral testimony, decreed that defendant had notice of complain-

ant's deed at the time she accepted her deed, and a decree was accordingly entered. From the adverse holding of the Chancellor, defendant appealed and has assigned errors.

Minnie B. Poynter, on the date of her death, Feb. 26, 1943, owned in fee the three tracts of land involved herein. She left surviving her a husband, C. E. Poynter, and three daughters by her husband, Winniedell Poynter, Justine Poynter Kaufman and Cleo Poynter Kratzer.

It is agreed that all the requisites necessary to vest in the husband a life tenancy by curtesy are present here, viz.: marriage, seizin of the wife, issue born alive, and death of wife; and that C. E. Poynter was vested with a life tenancy by curtesy in his wife's lands, with remainder in the three named daughters.

Subsequent to his wife's death, Poynter and his daughter, Winniedell, lived on the land until 1944 when Poynter remarried and moved away leaving the land in his daughter's possession as his agent or representative.

On April 6, 1945, Poynter executed a deed in which he purported to convey to Branstetter the three tracts of land in question, for the sum of $1150.00, to be paid as follows: $800.00 in cash and the balance to be paid upon the grantor paying the accrued back taxes. This deed was not recorded until October 24, 1945. In the meantime, on September 6, 1945, Poynter and his two daughters, for a valuable consideration, conveyed their interest in said land to Winniedell Poynter. This deed was recorded October 18, 1945, one week before Branstetter's deed was recorded.

It is insisted here that there is no material and competent evidence to support the decree of the Chancellor. In responding to this assignment, we shall refer to and

quote certain portions of the testimony of complainant's witnesses.

The complainant, Branstetter, testified that Poynter delivered to him the deed to the land on April 6, 1945, in the presence of John R. Davis, former Justice of the Peace, and that he agreed to pay Poynter $1150.00 for the land; that on the date the deed was delivered he paid $800.00 in cash to the grantor, and that $350.00 was retained by him until the back taxes were paid by Poynter; that on the following day Poynter, while passing with a truckload of furniture, gave him the key to the house and said that he was moving away; that within a few days after the deed was delivered, he had the following conversation with the defendant:

"Winniedell Poynter, and her sister, Mrs. Kaufman, I don't recall her given name presently, came in my store and asked me if I had bought their father's old home place in Deer Lodge.

"I told them that I had purchased the property, and I was standing behind the show case and they were in front of the show case, and I told her there was the deed laying in the showcase if she wanted to read it, and she got very angry when she learned her father had sold the property and said she didn't want to read the deed. She wanted to know then if she was going to get any part of the money and I told her I didn't know about that. That was between her and her father that I knew nothing of. And she made several harsh statements relative to her father and the property."

John R. Davis testified that Poynter came to his office and asked him to go to Branstetter's Store where he took Poynter's acknowledgment on the deed, and that he saw Branstetter pay Poynter some money; that he was told by both of them that it was all of the purchase price ex-

cept $350.00 which Branstetter retained until the delinquent back taxes on the land were paid.

The defendant, Winniedell Poynter, admitted that she went to complainant's store in April, 1945, and that Branstetter told her that he had papers signed by her father authorizing him to sell the land. She admitted that she acquired the deed to the land from her father and sisters on September 6, 1945, and that she paid each of her sisters $500.00 for their interest therein. She further stated that she testified in the unlawful detainer suit in and sisters that the record was searched to see if there were any other deeds of record against the land. She stated that she testified in the unlawful detainer suit in which she was plaintiff against Clay Jones and wife, Stella Jones, in the Circuit Court which involved the question of possession of the land. She denied that she swore in the unlawful detainer suit that Branstetter showed her his deed to the land while she was in his store.

C. E. Poynter was called as a witness in behalf of defendant and testified he was 67 years old, and that he lived at Sunbright, Tennessee. He denied that Branstetter paid him $800.00 or any amount for his interest in the property. He admitted his signature on Branstetter's deed, and stated that John R. Davis took his acknowledgment thereto.

Dolph Arms, Deputy Warden of Brushy Mountain Prison and former sheriff of Morgan County, was called as a rebuttal witness by complainant. He testified that he was present when the unlawful detainer suit of Winniedell Poynter v. Clay Jones and wife was tried in the Circuit Court at Wartburg. This witness gave his version of defendant's testimony in the unlawful detainer suit as follows:

"Q. Did or not, she say that Branstetter told her that was a deed? A. She asked if he bought her father's place, the old home place at Deer Lodge, he said, yes, and pointed to a show case, and said there it is, do you want to read it, and she said, no. I believe you'll find that's the way she said it."

J. W. Stone, a reputable attorney of the Harriman Bar, was also called as a rebuttal witness for complainant and testified as follows:

"I represented Clay Jones and wife on trial of the case of Winniedell Poynter v. Clay Jones and wife in the Circuit Court in Morgan County, and on that trial, Winniedell Poynter testified in her own behalf, and on cross examination, being asked about it, she testified that she went to the store of Mr. Branstetter and asked him if he had bought the old home place from her father, that he said, yes, I did, and she asked him if he got a deed, and he said, yes, there it is in the show case, and that she saw the paper in the show case but she told him she didn't want to read it."

After reviewing all of the testimony, we concur with the findings of the Chancellor that the defendant had actual notice of complainant's deed prior to the time she acquired her deed, and this assignment is overruled.

In Gibson's Suits in Chancery, Fourth Edition, it says:

"No one can transfer to another a greater right to a thing than he himself possesses; and no one can, in reason and conscience, expect to acquire a greater right than the vendor could rightfully sell. He who buys with notice of another's rights is bound in good conscience to hold what he buys, subject to those rights, for otherwise he would be taking advantage of his own wrong, and would be enriching himself at another's expense, neither of which acts is permitted by a Court of

Conscience. . . . Besides, a purchaser with notice has no right to complain when the third person, of whose claims he had notice, demands his own; for the purchaser was under no compulsion to buy, and . . . Any loss resulting from the prior and superior equities of the third party, the purchaser with notice must charge to his own negligence or wilfulness; for, when one of two persons must suffer a loss, he shall suffer whose own act or negligence occasioned such loss. . . . In conformity with these general doctrines, the rule is clearly established that a purchaser with notice of another's rights, in or to the thing purchased, is, in Equity, liable to the owner of those rights, to the same extent and in the same manner as the person from whom he made the purchase.'' Sec. 65. See Code Section 7667, 7668; Knowles v. Masterson, 22 Tenn. 619; Stanley v. Nelson, 23 Tenn. 484; Meyers v. Ross, 40 Tenn. 59; Turbeyville v. Gibson, 52 Tenn. 565; Simpkinson & Co. v. McGee, 72 Tenn. 432; Kirkpatrick v. Ward, 73 Tenn. 434; Campbell v. Home Ice Co., 126 Tenn. 524, 150 S.W. 427; Haggard v. Benson, 3 Tenn. Ch. 268.

■ It is further insisted that the complainant was guilty of laches in that he made no effort to assert his claim to the land until after September 6, 1945; that he did not have his deed recorded until October 24, 1945. For reasons stated in the preceding assignment—the defendant having had notice of complainant's deed—this assignment is without merit and is overruled.

■ Defendant has complained that the Chancellor erred in refusing to hold that the judgment in the unlawful detainer suit of Poynter v. Clay Jones and wife was binding on complainant. In that suit the defendant herein obtained a judgment in the Circuit Court against Clay Jones and wife for the possession of the property. This

judgment was not appealed. It is argued here that the unlawful detainer suit should be treated as res adjudicata because Jones and his wife were complainant's agents put in charge of the property by him after he acquired his deed. In the first place, complainant was not made a party to the unlawful detainer suit; and, secondly, the unlawful detainer suit involved the question of possession of the property and not the title thereto.

In the trial of unlawful detainer suits "the estate, or merits of the title, shall not be inquired into," Code Section 9257. Referring to this section of the code, the late Judge Crownover of this Court, in Mathis v. Campbell, 22 Tenn. App. 40, 117 S. W. (2d) 764, 767, said:

"The Circuit Court had no jurisdiction to inquire into the title of the property in a forcible entry and detainer suit (Code, Sec. 9257); but the Chancery Court had jurisdiction under an ejectment bill to inquire into and settle the title, and having done so it might decree that the owner was entitled to the immediate possession of same. Gibson's Suits in Chancery, 4th Ed., Sec. 1045; Code, Secs. 9118, 9142. Therefore, having jurisdiction to settle the rights of the parties as to title and the consequent right of possession, and having acquired jurisdiction for one purpose it acquired it for all purposes. Nashville Union Stockyards v. Grissim, 13 Tenn. App. 115." See also Brown v. Grayson, 160 Tenn. 374, 24 S. W. (2d) 894.

It is the insistence of the defendant that the deed from her father to complainant dated April 6, 1945, was champertous and therefore void. There is no proof of adverse possession to sustain this assignment. When Minnie Póynter died in 1934, her husband immediately became vested with a life tenancy by curtesy in her lands, and as such he was entitled to possession of said property during his natural life. He and the defendant, who was

single, continued to occupy the property under his right of possession, the defendant living there with him as a part of his family. When Poynter remarried in April, 1944, he left defendant, without any sort of agreement, in possession of the property. On the question of being left in possession of the property, defendant testified as follows:

"The Court: You went into possession when your father married. Under what agreement or contract did you go into possession? A. You mean when Daddy married and left? Well he just left and left me there.

"The Court: Was anything said about it at all? Any agreement? A. He was just married and wanted to go over there and live, and there was a girl that stayed with me at night. I taught school during the day. Then, I went over to Oak Ridge to work.

"The Court: Your father married and left, you just stayed on? A. Yes sir.

"The Court: No agreement or anything about it? A. It was the only home I had.

"McCartt: You were holding that by virtue of your mother having title? A. Yes, and I knew it was ours."

The mere possession of land does not in and of itself show an adverse claim to the owner thereof, and no adverse claim arises from a use permissive in its inception until a distinct and positive assertion of a right adverse to the owner has been brought home to him. Every presumption is in favor of the true owner and the burden of proving adverse possession is upon one pleading and relying upon it. O'Brien v. Waggoner, 20 Tenn. App. 145, 155, 96 S. W. (2d) 170, 175, and cases there cited; Harrison v. Beaty, 24 Tenn. App. 13, 18, 19, 137 S. W. (2d) 946, 949, 950 and cases cited; Stockton v. Murray, Tenn. App. 157 S. W. (2d) 859, 863; Mercy v.

Miller, 25 Tenn. App. 621, 166 S. W. (2d) 628. We find no satisfactory proof that defendant ever gave her father any knowledge that she was claiming the property adversely to him, and this assignment is overruled.

The remaining assignment challenges the action of the Chancellor in taxing defendant with the cost. The taxation of costs in equity causes is largely in Chancellor's discretion, which will not be disturbed except for manifest and palpable abuse. Hawkins v. Spicer, 20 Tenn. App. 528, 101 S. W. (2d) 151; Ezell v. Hake, 184 Tenn. 319, 198 S. W. (2d) 809.

After decreeing that complainant was entitled to the use and possession of the described land by reason of having purchased the curtesy right of C. E. Poynter on April 6, 1945, the Chancellor's decree further provided:

"That by heirship from her mother, Minnie Poynter, and by purchase from her sisters Justice Kaufman and Cleo Kratzer, the defendant, Winniedell Poynter, became the owner and is now the owner of the remainder interest in said property subject to the life estate of the said C. E. Poynter now owned by the complainant, W. E. Branstetter.

"That the complainant, W. E. Branstetter, is now and has been since April 6, 1945, entitled to the possession of said property and it is ordered that the Clerk and Master will issue a writ of possession to place the said W. E. Branstetter in the peaceable possession of said property during the life time of the said C. E. Poynter.

\* \* \* \* \* \* \* \* \*

"Upon application of the complainant a reference is ordered to the Clerk and Master who is directed to hear proof and report what damage, if any, the said complainant W. E. Branstetter has sustained by reason of having

been kept out of possession of said property by the defendant Winniedell Poynter, since he acquired his deed to the life estate. The Master will make and file her report to the next term of this Court.''

While Poynter's deed to complainant purports to convey an absolute title to the land, the Chancellor's decree is in line with the decisions of our Supreme Court. In Sloan v. Sloan, 182 Tenn. 162, 184 S. W. (2d) 391, 392, Mr. Justice Gailor, speaking for our Supreme Court, said:

''It is elementary that a deed will be given an interpretation which will cause it to be effective at law in preference to one which would render it inoperative and void. Hicks v. Sprankle, 149 Tenn. 310, 314, 257 S.W. 1044; New Memphis Gaslight Co. Cases, 105 Tenn. 268, 280, 60 S. W. 206, 80 Am. St. Rep. 880. A deed which purports to convey a greater estate than the grantor has will be void only as to the excess and will be construed as a conveyance of that which it was in his power to convey. 26 C. J. S., Deeds Sec. 122 p. 418; Cobb & Wife v. Sanders, 1 Tenn. App. 326, 337.''

We find no error in the Chancellor's decree and the same will be affirmed at appellant's costs. The cause will be remanded for such orders as may be required.

McAmis and Hale, JJ., concur.