IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 1, 2022

**TERESA LOCKE v. GAIUS LOCKE ET AL.**

**Appeal from the Circuit Court for Williamson County**
**No. 2021-CV-279        James G. Martin, III, Judge**

_____

**No. M2021-01454-COA-R3-CV**

_____

The plaintiff, the title holder of the disputed real property, filed a detainer action seeking the removal of the defendants from a portion of her property. The defendants were residing in a mobile home owned by the mother of one of the defendants. The defendant's mother had lived in the mobile home, which was located on the disputed parcel of real property, from 1984 until 2020 when she decided to relocate to an apartment and allow the defendants to live in her mobile home. The defendants asserted adverse possession as a defense to the plaintiff's detainer action, pursuant to Tennessee Code Annotated § 28-2-103, tacking the mother's years of possession onto their own. The trial court entered a judgment in favor of the plaintiff, determining that the defendants had failed to prove by clear and convincing evidence that the mother's possession of the property had been adverse for the requisite seven-year period. The defendants appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Gaius Locke and Marie-Louise Locke, Franklin, Tennessee, Pro Se.

David M. Jones and Thomas N. Jones, Franklin, Tennessee, for the appellee, Teresa Locke.

**OPINION**

**I. Factual and Procedural Background**

On April 21, 2021, the plaintiff, Teresa Locke ("Plaintiff"), filed a detainer summons to evict the defendants, Gaius Locke and his wife, Marie-Louise Locke

(collectively, "Defendants"), from a portion of her real property ("Disputed Property") situated in Williamson County.[1] After conducting a trial, the Williamson County General Sessions court ("general sessions court") entered a judgment in favor of Plaintiff on July 15, 2021. The general sessions court determined that Defendants were trespassers on Plaintiff's property and granted Plaintiff a judgment against Defendants for possession of the Disputed Property. The general sessions court further ordered Defendants to remove the mobile home from the property in question within sixty days. Defendants appealed to the Williamson County Circuit Court ("trial court").

In their pre-trial memorandum, Defendants asserted the affirmative defense of adverse possession set forth in Tennessee Code Annotated § 28-2-103. After conducting a trial on August 27, 2021, the trial court entered a judgment in favor of Plaintiff on November 2, 2021. In its order, the court recited the history of the case and the Disputed Property. According to the court's order, Plaintiff was the owner of a 67.7-acre farm in Williamson County, Tennessee, which she had inherited upon the death of her husband and Gaius Locke's grandfather, Thomas E. Locke, Jr. ("Grandfather"), in 2015. In 1984, Grandfather had gifted the mobile home that was situated on the Disputed Property to his son, Thomas Ray Locke, who began to raise his family there with his then-wife, Lolita Locke. Thomas Ray Locke ("Father") and Lolita Locke ("Mother") are the parents of defendant Gaius Locke, and they were divorced in 1992. Mother was awarded the mobile home pursuant to a marital dissolution agreement, which provided that Grandfather would allow Mother to continue to maintain her mobile home on his property unless he asked her to remove the mobile home (1) for just cause, (2) in the event she remarried, or (3) if she desired to relocate the mobile home.

During Mother's time spent living in the mobile home, Grandfather periodically threatened to force her to move her mobile home off his property. When Plaintiff inherited the Disputed Property in 2015, Mother was still residing in the mobile home. In the last several months of 2020, Plaintiff attempted and failed to contact Mother, and as a result, requested that police conduct a "welfare check" at Mother's mobile home in January 2021. Upon completion of the "welfare check," police informed Plaintiff that Mother had vacated the mobile home and allowed her son and daughter-in-law, Defendants, to occupy the mobile home. Plaintiff had not consented to this arrangement, and she consequently filed the instant detainer action after Defendants refused to vacate the Disputed Property.

The trial court determined that Plaintiff was entitled to a judgment of possession inasmuch as Defendants had failed to prove the defense of adverse possession pursuant to Tennessee Code Annotated § 28-2-103. The court concluded that Mother did not begin to adversely possess the property with "hostility" until 2020 and consequently Defendants

---

[1] The familial relationship between Defendants and Plaintiff is not clear from the record. Defendants refer to Plaintiff as defendant Gaius Locke's grandmother but also state that Gaius Locke's father, Thomas Ray Locke, is Plaintiff's stepson.

could not satisfy the seven-year period of adverse possession required by § 28-2-103. In addition, the court concluded that the mobile home was personal property, rendering § 28-2-103 inapplicable. The court provided Defendants with ten days following entry of its order to remove their personal property from the land and to vacate the Disputed Property. Noting that Mother was not a party to the action, the court did not order the removal of the mobile home or any of Mother's other personal property from the Disputed Property. The court denied Plaintiff's request for recovery under the Uniform Residential Landlord and Tenant Act.

On November 8, 2021, the trial court entered an amended order, supplying further reasoning in support of its ruling. The court determined that no privity existed between Defendants and Mother as required to tack successive possessions under Tennessee Code Annotated § 28-2-103. Defendants timely appealed.

## II. Issues Presented

Defendants raise the following issues for this Court's review, which we have restated slightly as follows:[2]

1.     Whether the trial court erred by determining that Mother's possession of the Disputed Property had been permissive rather than adverse.

2.     Whether the trial court erred in its assessment of Mother's rights to the Disputed Property.

3.     Whether the trial court erred in concluding that the lack of privity between Defendants and Mother rendered Tennessee Code Annotated § 28-2-103 inapplicable.

4.     Whether the trial court erred by treating Mother as a party to the proceedings.

## III. Standard of Review

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record, with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257

---

[2] We note that Defendants included additional, enumerated issues in their reply brief. However, these additional issues are substantively similar to the issues raised in their initial brief.

(Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)).  The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary.  *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).  We review the trial court's conclusions of law *de novo* with no presumption of correctness.  *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011).

We recognize that Defendants are *pro se* litigants and respect their decision to proceed self-represented.  With regard to self-represented litigants, this Court has explained:

> *Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden.  *Gray v. Stillman White Co.*, 522 A.2d 737, 741 (R. I. 1987).  Conducting a trial with a *pro se* litigant who is unschooled in the intricacies of evidence and trial practice can be difficult.  *Oko v. Rogers*, 125 Ill. App. 3d 720, 81 Ill. Dec. 72, 75, 466 N.E.2d 658, 661 (1984).  Nonetheless, trial courts are expected to appreciate and be understanding of the difficulties encountered by a party who is embarking into the maze of the judicial process with no experience or formal training.

*Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988).  Although parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe."  *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).  In addition, this Court must "be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary."  *Id.*  Moreover, "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts."  *See Chiozza v. Chiozza*, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009) (quoting *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000)).

## IV.  Mother as an Indispensable Party

Defendants raise as an issue the trial court's purported treatment of Mother as a party during the trial.  Defendants note that the court informed Plaintiff during her testimony that she could testify as to statements made by Mother given that the court had mistakenly stated that Mother was a party to the action.  However, Defendants have asserted on appeal that "[m]ore grievous than the admission of hearsay evidence is the potential violation to [Mother's] due process rights" inasmuch as she had "no direct control over the defense presented in regards to her own property rights" and was not served with notice of the detainer action.  Defendants therefore contend that Mother was an indispensable party pursuant to Tennessee Rule of Civil Procedure 19.01.

Rule 19.01 provides:

A person who is subject to service of process shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person properly should join as a plaintiff but refuses to do so, he or she may be made a defendant, or in a proper case, an involuntary plaintiff.

This Court has previously noted that this rule is intended to "protect the interests of absent persons as well as those already before the court from multiple litigation and inconsistent judicial determinations." *Citizens Real Estate & Loan Co. v. Mountain States Dev. Corp.*, 633 S.W.2d 763, 766 (Tenn. Ct. App. 1981).

Additionally, this Court has explained:

[T]he language of Rule 19 is mandatory and directive; one who is an indispensable and necessary party "*shall* be joined as a party." TENN. R. CIV. P. 19.01 (emphasis added). The requirement of joinder of indispensable and necessary parties "appears absolute and inflexible," and applies to both trial courts and appellate courts. *Pope v. Kelsey,* No. 86-17-II, 1986 WL 6564, at *2 (Tenn. Ct. App. June 13, 1986), *no perm. app.* (quoting *Glickauf v. Moss*, 23 Ill. App. 3d 679, 320 N.E.2d 132, 135-316 (Ill. 1974)). When an indispensable and necessary party has not been joined, neither the trial court nor the appellate court may proceed further with the matter. *Id.* The parties are of course obliged to bring to the court's attention the necessity of such a joinder; however, even if the parties fail to do so, the trial court or even the appellate court must *sua sponte* enforce this principle of law. *Id.* (quoting *Glickauf*, 320 N.E.2d at 135-36).

*Baker v. Foster*, No. W2009-00214-COA-R3-CV, 2010 WL 174773, at *4 (Tenn. Ct. App. Jan. 20, 2010). Therefore, whether Mother is an indispensable party to this action is a threshold issue we must consider.

As this Court explained in *Moore v. Teddleton,* No. W2005-02746-COA-R3-CV, 2006 WL 3199273, at *6 (Tenn. Ct. App. Nov. 7, 2006), a "proper party is not the same as

a necessary or indispensable party." (quoting *Brewer v. Lawson,* 569 S.W.2d 856, 858 (Tenn. Ct. App. 1978)).  This Court further elucidated:

> A "proper party" to a lawsuit is one who has legal or equitable rights in the subject of the litigation.  *Horton v. Tennessee Dept. of Correction*, No. M1999-02798-COA-R3-CV, slip op. at 5 (Tenn. Ct. App. M.S. Sept. 26, 2002) (citing *Steele v. Satterfield,* 148 Tenn. 649, 654, 257 S.W. 413, 414 (1923); William H. Inman, *Gibson's Suits in Chancery* § 51 (7th ed.1988)).  A proper party is so connected with the dispute as to be under an enforceable obligation to the plaintiff, or to have a right or position with regard to the subject of the litigation that entitles him to defend against the court's judgment.  *Id.* (citing Inman, *supra,* § 53).  However, a proper party is not necessarily an indispensable party for the purposes of Tenn. R. Civ. P. 19.01.  *Id.*  "Only a party who will be directly affected by a decree *and whose interest is not represented by any other party to the litigation* is an indispensable or necessary party, that is, one without which no valid decree may be entered settling the rights between the parties that are before the [c]ourt."  *Brewer,* 569 S.W.2d at 858 (emphasis added).

*Moore*, 2006 WL 3199273, at \*6.

Mother would certainly qualify as a proper party to Plaintiff's action due to the possible effect the trial court's findings concerning the nature of her possession would have on her ability to return to the Disputed Property.  Nevertheless, we cannot conclude that the possible effect on Mother's interest in the property renders her an indispensable party.  We first note that the trial court's order only requires Defendants to remove their personal property and vacate the Disputed Property.  Ergo, the court's order has no direct effect on Mother or her personal property.  *See Brewer v. Lawson*, 569 S.W.2d 856, 858 (Tenn. Ct. App. 1978).  We also emphasize that Plaintiff's detainer action was filed against Defendants and requested only that Defendants and "All Occupants" be ordered to vacate the Disputed Property.  At the time, Mother was not an occupant of the mobile home or the Disputed Property, and Plaintiff sought no relief with respect to Mother's mobile home or her presence on the Disputed Property in her detainer summons.

Relatedly, Defendants assert that Plaintiff cannot be afforded complete relief without Mother as a party to the litigation because even if Defendants were to vacate the Disputed Property, Mother's belongings and mobile home would remain.  This may well be the case, particularly considering that the trial court took special precaution to order that only Defendants must remove themselves and their personal property from the premises while specifically noting that Mother was not a party to the litigation.  However, we do not

discern how this would render Plaintiff's relief incomplete when Plaintiff solely requested the court to order Defendants to vacate the Disputed Property.[3]

Defendants also argue that Mother was indispensable to Plaintiff's action because her interests were "not represented by any other party to the litigation," *see Brewer*, 569 S.W.2d at 858, asserting that the trial court did not allow Defendants to represent Mother's rights inasmuch as the court determined in its amended order that no privity existed between Defendants and Mother and thus Mother's possession could not be tacked on to Defendants' possession. The court's determination with respect to the absence of privity between Defendants and Mother, however, does not lead us to conclude that the court precluded Defendants from representing Mother's interests. Defendants argued that Mother's possession of the Disputed Property had been adverse such that Tennessee Code Annotated § 28-2-103 prevented Plaintiff from repossessing the Disputed Property. The court considered this argument, ultimately finding no adverse possession, but its consideration of the argument indicates that the court did not prevent Defendants from positing that Mother had adversely possessed the Disputed Property.

Defendants imply that they contested Plaintiff's detainer action and invoked the affirmative defense of adverse possession not only to prevent their eviction from the Disputed Property but also to protect Mother's ability to return to her mobile home and continue living on the Disputed Property once Defendants relocate. Thus, any interest Mother may have held in the Disputed Property was represented by Defendants. In their appellate brief, Defendants even assert that they "function as [Mother's] agents in this dispute" and that they "invoke" Mother's adverse possession claim "on her behalf and with her permission." Moreover, in this case a "valid decree may be entered settling the rights between the parties" without joining Mother as a party. *See Moore*, 2006 WL 3199273, at *6 (quoting *Brewer,* 569 S.W.2d at 858). Thus, we find Defendants' arguments unavailing and conclude that Mother was not an indispensable party to Plaintiff's detainer action.

## V. Hearsay Statements

As previously referenced, Defendants also claim that the trial court erred by allowing Plaintiff to present inadmissible hearsay as evidence at trial when the court permitted Plaintiff to testify to out-of-court statements made by Mother. According to Defendants, the court "preemptively overruled any objections to hearsay allegedly said by

---

[3] We recognize that in her pretrial memorandum, Plaintiff posited that "All Occupants" included Defendants as well as Mother and requested that the trial court order Mother to vacate the Disputed Property and remove her mobile home. However, if Plaintiff had desired to include Mother in the detainer action, Plaintiff would have needed to amend the detainer summons to add Mother as a defendant. Inasmuch as Plaintiff failed to add Mother as a party and the trial court properly tailored the final order to apply only to Defendants, we conclude that Defendants are correct in their estimation that Plaintiff will have to take separate action to remove Mother and her mobile home from the Disputed Property. Nonetheless, Plaintiff was awarded complete relief against Defendants, who were the only parties she sought to evict by her detainer summons.

[Mother]" by stating: "You [Plaintiff] can certainly testify as to what [Mother] said, 'cause she's a party." Although it is true the court mistakenly identified Mother as a party, we determine that Defendants have waived any objection to hearsay statements of Mother presented by Plaintiff.

To provide context to the trial court's misidentification of Mother as party, we note that the court made the statement after Defendants' counsel objected to hearsay related to Grandfather's out-of-court statements—not Mother's out-of-court statements. Moreover, the court's unsolicited statement did not induce Plaintiff to begin testifying about statements made by Mother. Rather, Plaintiff acknowledged that she could not recall being present during a conversation between Grandfather and Mother and then proceeded to testify about the unrelated topic of her own health problems. We emphasize that Defendants made no attempt to correct the court's inaccurate comment.

Later, when Plaintiff's testimony did turn to out-of-court statements made by Mother, Defendants presented no objection to her testimony. On appeal, Defendants challenge the propriety of Plaintiff's statements that Mother indicated to her that she had planned to leave the Disputed Property after Plaintiff informed her that she would need to find a new place to live. Specifically, Plaintiff testified that she had called Mother in September of 2020 to inform her that she was in poor health and that Mother would need to search for a new place to live because the Disputed Property would likely be sold upon Plaintiff's death. According to Plaintiff, Mother "said she understood and she was looking." Defendants' counsel never objected to Plaintiff's testimony. Defendants also contest on appeal Plaintiff's testimony that Mother told her that the mobile home was no longer "livable" and in "deplorable condition." Again, Defendants' counsel never objected to this testimony during trial.

We note that "[f]ailure to contemporaneously object to the admission of inadmissible hearsay testimony results in waiver of the issue on appeal." *Teague v. Kidd*, No. E2011-02363-COA-R3-CV, 2012 WL 5869637, at *6 (Tenn. Ct. App. Nov. 21, 2012); *see also Baxter v. Vandenheovel*, 686 S.W.2d 908, 911 (Tenn. Ct. App. 1984) ("Evidence admitted without objection at the trial level cannot be the subject of complaint at the appellate level."). Because Defendants' counsel failed to contemporaneously object to Plaintiff's testimony concerning Mother's out-of-court statements, we deem this issue waived.

## VI. Tennessee Code Annotated § 28-2-103

Defendants postulate that the trial court erred in determining that they failed to successfully prove the affirmative defense of adverse possession set forth in Tennessee

Code Annotated § 28-2-103 (2017).[4] Defendants specifically contend that the trial court erred in concluding that Mother's possession of the Disputed Property had been permissive rather than adverse; that the mobile home constituted personal property rather than real property, rendering § 28-2-103 inapplicable; and that no privity existed between Mother and Defendants, also rendering § 28-2-103 inapplicable. We will first review whether the court properly characterized Mother's possession as permissive rather than adverse and hostile.

Adverse possession may either operate as a "bar to recover adversely possessed property" or to "vest the adverse holder with title." *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 375 (Tenn. 2007). Our High Court has described Tennessee Code Annotated § 28-2-103 as a "limitation on action" statute and a statutory form of adverse possession. *See id.* at 376. Tennessee Code Annotated § 28-2-103 provides:

(a)    No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued.

(b)    No possession of lands, tenements or hereditaments shall be deemed to extend beyond the actual possession of an adverse holder until the muniment of title, if any, under which such adverse holder claims such lands, tenements or hereditaments is duly recorded in the county in which the lands are located.

Our Supreme Court has previously explained that "limitations on actions statutes," like § 28-2-103, "may be utilized by the adverse holder only in the defense of a suit and not as a means to bar use by the rightful owner" and that the provision "protects an adverse holder after a period of seven years but only as to that portion of the land in his actual possession." *See Cumulus Broad., Inc.*, 226 S.W.3d at 376.

Concerning § 28-2-103, this Court has expounded:

Because the statute creates a possessory right, it gives the adverse holder the right to sue for trespass or for an injunction to prevent repossession. It creates a defensive right in the adverse possessor against anyone, including the title owner, seeking to dispossess the adverse possessor. After the required seven years of adverse possession, "[u]ntil the

---

[4] As this Court has explained, "although common law adverse possession may be invoked either offensively or defensively, the statutory forms of adverse possession may be invoked solely as affirmative defenses." *Frinks v. Horvath*, No. E2016-00944-COA-R3-CV, 2017 WL 782720, at *7 (Tenn. Ct. App. Feb. 28, 2017) (citing *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 376-77 (Tenn. 2007); *Brewer v. Piggee*, No. W2006-01788-COA-R3-CV, 2007 WL 1946632, at *7-9 (Tenn. Ct. App. July 3, 2007)).

possession [of the adverse holder] . . . is surrendered, the right to possession of said lot is not remitted to the holder of the legal title."

For purposes of the case before us, Tenn. Code Ann. § 28-2-103 bars the right of the title owner to recover property that has been adversely held for more than seven years. The statute does not convey title, but may be used defensively by the adverse holder. It is "a defensive statute and protects the adverse holder in possession to the extent and upon the terms set forth in the statute."

Whether the party claiming rights under the statute of limitations has demonstrated adverse possession for the requisite seven years is, of course, a factual question in the first instance. To establish a defense for the recovery of land under the statute, the adverse holder's possession must be actual, adverse, continuous, exclusive, open and notorious for the entire seven year period. The character of the possession and the acts sufficient to indicate the assertion of ownership are the same under the statute of limitations as they are under common law adverse possession.

Tenn. Code Ann. § 28-2-103 protects an adverse holder without color of title only to that portion of the land which is being held adversely. Tenn. Code Ann. § 28-2-103(b) itself incorporates that principle by providing that the adverse possession shall not be deemed to extend beyond the actual possession of the adverse holder until some muniment of title is recorded.

*Michael v. Jakes*, No. M1999-02257-COA-R3-CV, 2002 WL 1484448, *12-13 (Tenn. Ct. App. July 12, 2002). In addition, "[t]he burden is on the party claiming ownership by adverse possession to demonstrate the requisite elements by clear and convincing evidence." *Wilson v. Price*, 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005).

Defendants specifically assert that although Mother's possession may have begun as permissive in 1992, Mother eventually ceased complying with Grandfather's demands and threats and instead claimed the piece of real property as her own. In contrast, the trial court determined that Defendants were unable to prove by clear and convincing evidence that their possession had been hostile and adverse, noting that Defendants had conceded that Grandfather had given his permission for Mother to remain on the Disputed Property in 1992 after her divorce from Father so that he could watch his grandchildren grow up. The court additionally found that Grandfather had retained the right to evict Mother from the Disputed Property for just cause or if she remarried, which was evinced by Mother's and Father's marital dissolution agreement. The court noted that Mother had testified that she felt a constant "noose around [her] throat," demonstrating that she understood that Grandfather and Plaintiff could remove her from the Disputed Property at any time. As a result, the court concluded that Mother did not begin to possess the land with hostility until

- 10 -

2020 when she allowed Defendants to live in the mobile home despite Plaintiff's request for her to start looking for a new place to live. We agree with the trial court that Mother's possession of the Disputed Property was not adverse and hostile for the requisite seven-year period outlined in Tennessee Code Annotated § 28-2-103.

Whether a purported adverse holder's possession of property has been hostile and adverse rather than permissive is a question of fact, which we review "*de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise." *Wilson*, 195 S.W.3d at 666. This Court has defined hostile possession as follows: "Unlike its general usage, hostility for the purposes of adverse possession does not require ill will. 'Hostility' exists, in the legal sense, when one 'holds the possession as his, against the claims of any other.'" *Id.* at 667 (quoting *Hightower v. Pendergrass*, 662 S.W.2d 932, 937 (Tenn. 1983)). Thus, the purported adverse possessor cannot establish the element of hostility if given permission to possess the property by the legal title holder. *See id.* at 668 ("Possession that might otherwise appear hostile cannot support a claim of adverse possession if carried out with the permission of the legal title holder.").

However, "[f]ailure to actively object does not imply permission." *Id.* If failure to actively object to the adverse claimant could be considered evidence of permission, then the legal title holder "could always defeat an adverse claimant by merely showing that he had never objected to the use of his property." *Id.* (quoting *Lamons v. Mathes*, 232 S.W.2d 558, 563 (Tenn. Ct. App. 1950)). In addition, "in the absence of positive proof or unambiguous circumstances showing that a possession is or is not adverse, the exclusive possession and use of the land are presumed to be adverse." *Gibson v. Shular*, 194 S.W.2d 865, 866 (Tenn. Ct. App. 1946). Nevertheless, this Court has also elucidated that "mere possession of land does not in and of itself show an adverse claim" and that "no adverse claim arises from <u>a use permissive in its inception until a distinct and positive assertion of a right adverse to the owner has been brought home to him</u>." *Branstetter v. Poynter*, 222 S.W.2d 214, 217 (Tenn. Ct. App. 1949) (emphasis added).

Upon our review of Defendants' Statement of Evidence, we conclude that the evidence does not preponderate against the trial court's findings of fact, and we agree with the trial court's assessment that Mother's possession of the Disputed Property had been permitted by Grandfather and Plaintiff.[5] Plaintiff testified that Grandfather had purchased the mobile home and gifted it to Father but that neither Father nor Mother had any ownership interest in the Disputed Property. Plaintiff further testified that after Father and

---

[5] Defendants included in the record a Statement of Evidence, which consisted of a transcript of the trial that had been completed by Defendants based upon a "digital audio recording" provided by the trial court. Plaintiff did not object to the substance of Defendants' Statement of Evidence. We will therefore accept Defendants' transcript as a "fair, accurate and complete account of what transpired" at trial. *See* Tenn. R. App. P. 24(c).

Mother divorced in 1992, Grandfather told Plaintiff that he had agreed to let Mother stay on the Disputed Property because he wanted to watch his grandchildren grow up. Father's and Mother's marital dissolution agreement supports Plaintiff's testimony, stating:

> It is further the understanding of the parties that [Grandfather], on whose property the mobile home is located, will allow [Mother] to keep her trailer on his property unless [Grandfather] asks [Mother] to remove the trailer for just cause, if she remarries, or if she desires to move the trailer.

Thus, Mother acknowledged in 1992 that (1) her mobile home was situated on Grandfather's property and (2) Grandfather was permitting Mother to reside on his property. Therefore, as acknowledged by all parties, Mother's possession of the Disputed Property began with Grandfather's permission and was not hostile in its inception. As a result, Defendants needed to prove that an adverse claim arose later by "a distinct and positive assertion of a right adverse to" Grandfather or Plaintiff by Mother. *See Branstetter*, 222 S.W.2d at 217.

Defendants contend that Grandfather materially changed the agreement set forth in the marital dissolution agreement by later charging Mother rent to reside on the Disputed Property. The only evidence presented with respect to rent charged by Grandfather was Plaintiff's testimony that Grandfather at one point charged Mother rent for a few months due to a disagreement between the two and because Grandfather wanted to "teach[] her a lesson." Plaintiff further testified that Grandfather would periodically threaten Mother "to make her think he was gonna make her move the trailer." Although the marital dissolution agreement contained no mention of rent, the fact that Grandfather at one point charged Mother rent to remain on the Disputed Property and periodically threatened to force her to vacate the premises further demonstrates that Mother's possession of the Disputed Property was permissive rather than adverse. Moreover, although Mother testified that Grandfather "constantly threatened" her with eviction, she clarified that eviction was only a "possibility" and that Grandfather never actually commanded her to vacate the premises.

Defendants further contend that at one point during her possession of the Disputed Property, Mother "no longer agreed to any conditions and claimed the property as her own" and that Grandfather revoked his permission for her to live there. However, no evidence in the record supports Defendants' assertions. Plaintiff testified concerning Grandfather's disagreements with Mother. According to Plaintiff, Grandfather would relay to Mother: "You'll do this or you'll move your trailer." Plaintiff explained that Grandfather "would do that often and then they would disagree about it, and then [Mother] would kind of change her attitude." Plaintiff's testimony indicates that Mother would comply with Grandfather's demands and that Grandfather would merely threaten Mother with eviction. Furthermore, as previously emphasized, Mother affirmed multiple times at trial that Grandfather never explicitly ordered her to vacate the Disputed Property but rather continuously let her know that he could in fact force her to vacate such that she felt like

she had a "noose around [her] throat." According to Mother, these threats also led her to submit applications for other places to live and discuss her situation with attorneys at Legal Aid, who advised her that she need not be concerned about Grandfather's threats unless he served her with "papers."

Based on Plaintiff's and Mother's testimonies, we cannot conclude that Mother made "a distinct and positive assertion of a right adverse" to Grandfather or Plaintiff. *See Branstetter*, 222 S.W.2d at 217. At the earliest, Mother or Defendants may have begun to claim to "hold the possession as [hers or theirs], against the claims of any other" when Mother permitted Defendants to live in the mobile home after being asked to relocate by Plaintiff and Defendants subsequently refused to vacate the premises. *See Hightower v. Pendergrass*, 662 S.W.2d 932, 937 (Tenn. 1983). However, considering that Defendants did not move into the mobile home until January 2021, Defendants cannot establish that their possession was hostile for the requisite seven-year period pursuant to Tennessee Code Annotated § 28-2-103. Having concluded that the trial court correctly determined that Defendants failed to prove an essential element of the statutory defense of adverse possession, we conclude that Defendants' remaining issues are pretermitted as moot.

## VII. Conclusion

For the foregoing reasons, we affirm the trial court's order granting Plaintiff a judgment of possession and providing for the removal of Defendants and their personal property from the Disputed Property. Accordingly, we remand this case for collection of costs below. Costs on appeal are taxed to the appellants, Gaius Locke and Marie-Louise Locke.

s/ Thomas R. Frierson, II
THOMAS R. FRIERSON, II, JUDGE