MATHIS et al. v. CAMPBELL et al.—117 S. W. (2d) 764.

Middle Section.  March 26, 1938.

Certiorari Denied by Supreme Court, June 11, 1938.

R. L. Turner and W. J. Miller, both of Smithville, and Cummings & Melton, of Woodbury, for appellant Mrs. Campbell.

George S. Buckner, of Smithville, for appellees Mathis and others.

CROWNOVER, J. This cause is before us on appeal arising on a petition or supplemental and amended bill filed by the complainants in the above styled cause making the defendant Campbell's wife, Mrs. Meedia Campbell, a party defendant, and seeking to enjoin the further prosecution of a forcible entry and detainer suit pending in the circuit court, and to establish the boundary line between the complainants and the defendants.

The original bill in this cause was filed by the complainants against Tommie Campbell in the Chancery Court seeking a mandatory injunction commanding the defendant to remove certain obstructions placed in the creek and to restrain him from committing alleged trespasses, and also to establish the boundary line between the tracts of land owned by the complainants and the defendants.

That original cause was heard by the Chancellor on oral testimony and he rendered a decree sustaining the complainants' contentions and establishing the boundary line at the place located by the surveyor in the original cause. The decree was affirmed by the Court of Appeals[1] and the petition for a certiorari was denied by the Supreme Court. The cause was remanded to the Chancery Court for the execution of the decree. And when the complainants attempted to remove the fence out to the line as decreed by the court they found that the defendant's wife, Mrs. Meedia Campbell, had gone into possession of the little strip of land in dispute and claimed to be holding it under a deed executed by Monroe Parker to her and

---

[1]No opinion for publication.

to her husband conveying the tract of land claimed by the defendants as tenants by the entirety. They proceeded to take possession over the protest of Mrs. Campbell, and she obtained a writ of forcible entry and detainer from a justice of the peace, who decided that case in favor of Mrs. Campbell. The Mathises appealed to the Circuit Court where the forcible entry and detainer suit was again tried resulting in a judgment in favor of Mrs. Campbell.

A motion for a new trial was made by them, and pending a hearing on said motion this petition or supplemental and amended bill was filed in this cause in the Chancery Court by the Mathises against the defendant, Tommie Campbell, making his wife, Mrs. Meedia Campbell, a party to this suit, seeking to enjoin the proceedings in the Circuit Court, and to establish the line as against Mrs. Campbell.

The defendant, Mrs. Campbell, filed a long demurrer setting out ten grounds why the court had no jurisdiction to try the issues made in the petition after the original case had been disposed of in the appellate court.

The demurrer was overruled, and the defendant, Mrs. Campbell, filed an answer insisting that she was the owner of the land in dispute as tenant by the entirety and had had adverse possession of the same through herself and her vendors for more than seven years, and she pleaded the limitations of seven, ten, and twenty years in bar of the suit.

The Chancellor heard the case on oral and documentary evidence under a written agreement as provided by the Public Acts of 1917, Chapter 119, and held that under the evidence the complainants were the owners of the land out to the line surveyed in the original cause, and he taxed each party with one-half of the costs.

The defendant, Mrs. Campbell, excepted and appealed to this court and has assigned the following errors:

(1) The Chancellor erred in overruling the demurrer for the reasons stated in the demurrer and set out in the assignments of errors.

(2) The Chancellor erred in locating the line in dispute as contended for by the complainants, for the reason that the great weight and preponderance of the evidence showed that the line was on the old fence row as contended by the defendant.

(3) The Chancellor erred in not holding that the suit was barred by the limitations of seven, ten, and twenty years.

(4) The Chancellor erred in permitting the petition to be filed in this cause and in admitting the pleadings, decrees, and procedendo to be read as evidence on the trial in this cause, as Mrs. Campbell was not a party to the original suit and is not bound by it.

(5) The Chancellor erred in permitting witness to file pictures of marked lines on trees as exhibits to his testimony in rebuttal.

(6)   The Chancellor erred in taxing appellant with one-half of the costs.

The facts necessary to be stated are:

The complainants are the owners of a small tract of land bounded on the east and southeast by the lands owned by the defendants.

Prior to 1892 James T. Hale and L. B. Hale owned a tract of land in DeKalb County as tenants in common.   On January 11, 1892, they made a partition of said land, in which James T. Hale and wife conveyed the western portion of said land to L. B. Hale, giving the following description:

''Beginning at a chestnut the corner of a tract this day deeded to Blewford Mathis, running south 41½ degrees west with a marked line 95½ poles to a rock on the hill, then south 78 degrees 15⅘ poles to an old chestnut oak, Spurlock's corner, then northwest direction to Adamson, his corner, then still a northwest direction with a conditional line and top of the ridge made by Hancock and Mary Hale to two chestnuts the corner of a tract of land that Mary Hale bought of A. L. Hancock; thence a northerly direction and with a conditional line to a hickory the northwest corner of said land, due west to the beginning, then east with a line to the beginning, containing by estimation 45 acres more or less.''

And James T. Hale and wife and L. B. Hale and wife conveyed the eastern portion of said land to Blewford Mathis, giving the following description:

''Beginning at a chestnut standing on the ridge on said Blew Mathis west boundary line, running south 41½ degrees west with a marked line and stakes 95½ poles to a rock on the point of the hill, thence south 78 degrees west 15½ poles to an old chestnut oak, Spurlock's corner, thence south with his line 20½ poles to a chestnut and pointers; thence east 22 poles to a stake and pointers, then north 1½ poles to a stake; then east with Hall's line 19⅓ poles to a down poplar on a hill, then north 10 degrees west with said Hall's line 15½ poles to an elm (formerly a poplar) then east 5 poles to a stake; then north 70 degrees east with Hall's line 36 poles to a stake on said Blewford Mathis formerly line to the beginning, containing by estimation 35 acres, more or less.''

Blewford Mathis owned a tract of land just east of and adjoining the Hale land, which was known as the Ruyle land.

L. B. Hale was the father of the complainant, Mrs. Etta Mathis, wife of N. H. Mathis, deceased, and he was the grandfather of the other complainant Mathises.   N. H. Mathis was the son of Blewford Mathis.

After the death of L. B. Hale, the said N. H. Mathis purchased the interest of some of the heirs of L. B. Hale, in 1905, but in taking title thereto an error was made in the description, and the bound-

aries set out in the deed included all of the original Hale tract of land, but N. H. Mathis never exercised control over any portion thereof of other than the western portion intended to be conveyed to him.

A bill was filed in the Chancery Court by N. H. Mathis for a sale for division of the L. B. Hale tract, and he became the purchaser at said sale. The deed covered the whole tract but he never exercised control or claimed that portion of the Hale tract formerly conveyed to Blewford Mathis.

After the death of Blewford Mathis a bill was filed in the County Court of DeKalb County by his heirs to sell his lands for distribution and they were purchased by Monroe Parker, who took a deed which have general boundaries as follows:

"Bounded on the north by Craddock and Saddler; on the east by the lands of Chumbley and Anderson; and on the south by the lands of Hale; and on the west by the lands of Mathis, and containing 127 acres, more or less."

The Parker deed was executed on April 20, 1920, but was not recorded until July 31, 1931.

Monroe Parker conveyed said 127 acres, on October 28, 1928, to Tommie Campbell and wife, Meedia Campbell, the description being by general boundaries as above set out. This deed was not recorded until July 31, 1931. The Parker deed containing 127 acres included both the Hale 35 acres and the Ruyle tract.

It will be observed that the foregoing assignments of errors raise five propositions: (1) The demurrer raises the propositions (a) that the court had no jurisdiction to entertain a petition making Mrs. Meedia Campbell a defendant after the original case had been disposed of in the appellate court; (b) that the Chancery Court had no jurisdiction under this petition to enjoin the forcible entry and detainer suit pending in the Circuit Court, as that court had acquired jurisdiction; (c) that the chancery Court had no jurisdiction to hold that Mrs. Campbell was estopped by the original suit against her husband, as she was not a party to that suit. (2) The evidence greatly preponderates in favor of the defendant's contention as to the location of the line. (3) The Chancellor erred in not holding that this suit was barred by the limitations of seven, ten and twenty years. (4) The Chancellor erred in admitting certain evidence. (5) The Chancellor erred in taxing one-half of the costs against the appellant.

1. Ordinarily the demurrer would be well taken, as the lower court has no jurisdiction after an appeal is perfected and the case has been disposed of in the appellate court, except upon remand for some specific purpose. James v. Williams, 20 Tenn. App., 420, 99 S. W. (2d), 831.

■ But the petition or supplemental and amended bill filed in this case has all the requisites of an original bill. It prayed for process, and the defendant, Mrs. Campbell, entered her appearance and filed a demurrer and an answer. And upon the issues made the case was tried by the Chancellor on oral evidence. The issues were sharply drawn and much evidence was introduced entailing a large amount of costs; hence we see no reason why we should not treat this petition or supplemental and amended bill as an original bill in the case in order to end the litigation.

"To avoid the perplexities resulting from the anomalous and reprehensible practice of filing improper petitions in a cause, and taking issue and making decrees on them, our Supreme Court, constrained by the statute, and prompted by a most commendable disposition to do justice despite such gross irregularities, has dealt with such petitions as though they were original bills, and has given the consequent relief." Gibson's Suits in Chancery (4 Ed.), sec. 796; Murphy v. Johnson, 107 Tenn., 552, 64 S. W., 894; Morgan v. Layne, 165 Tenn., 513, 56 S. W. (2d), 161.

Hence the demurrer as to the jurisdiction of the court is overruled.

■ The Circuit Court had no jurisdiction to inquire into the title of the property in a forcible entry and detainer suit (Code, sec. 9257); but the Chancery Court had jurisdiction under an ejectment bill to inquire into and settle the title, and having done so it might decree that the owner was entitled to the immediate possession of same. Gibson's Suits in Chancery (4 Ed.), sec. 1045; Code, secs. 9118, 9142. Therefore, having jurisdiction to settle the rights of the parties as to title and the consequent right of possession, and having acquired jurisdiction for one purpose it acquired it for all purposes. Nashville Union Stockyards v. Grissim, 13 Tenn. App., 115. Therefore the Chancery Court had jurisdiction to enjoin further proceedings under the forcible entry and detainer case. Casey v. McFalls, 3 Sneed, 115.

■ Mrs. Campbell was not a party to the original suit and is not estopped by the decree or proceeding in the original cause, but this question is not determinative of the suit.

■ 2. The Chancellor held that under all the evidence the correct location of the line between the parties is as located by the complainants. We have carefully read all the record and followed all the surveys made as shown on the maps, and we are of the opinion that the evidence does not preponderate against the decree of the Chancellor. Code, sec. 10622.

It will be observed that the line in controversy is the 95½ pole line between the Mathis 45 acre tract and the defendants' 35 acre tract. The amount of land involved is about 5 or 6 acres, and they deraigned title from a common source.

These two tracts were owned by the Hales and they employed a surveyor, John Hipps, to divide the land. One of Hale's sons was present when this survey was made forty-five years ago and he testifies that the line surveyed by Hipps was along the location as contended for by the complainants; that there was a hickory tree in that old line and that the old survey ran on one side of it and the new survey made by Underhill ran on the other side of it, and that the two surveys were very close together. This witness appears to be honest and fair, and his character was not attacked. So far as the record shows, none of the other witnesses knew where the Hipps survey located that line. In fact, all of the complainants, except Mrs. Mathis, were born after that survey.

The case was tried on oral evidence and the Chancellor saw the witnesses face to face and heard them testify and his opinion is entitled to great weight. Trice v. McGill, 158 Tenn., 394, 398, 13 S. W. (2d), 49.

The chancellor in discussing this question said:

"The real determinative question after all, in the opinion of the Court, is where is the true boundary line between these tracts of lands of the complainants and the defendants, and whether it has been correctly located heretofore by the Courts, or whether it is as it is now insisted by Mrs. Campbell, and she insists the location is the same place her husband previously and heretofore in other cases, insisted it was.

"There are no known corners established around this tract so far as I am able to find from the proof. The surveys made by the Mathis parties and contentions made by the Mathis parties, that a beech has been located by decree in the case of Campbell v. Hall,[1] in this Court about the year 1931, and the former Chancellor in case of Mathis v. Campbell ordered a survey taking that beech and locating the other lines of this tract by running from that beech as an established point.

"There is a map filed in the record, drawn by Mr. Roy, the red lines upon which set forth the surveys as made by Mr. O. E. Underhill. The black or blue lines set forth the contentions as to where the true line is as made by the Campbells, and appropriate lettering indicates the corners, or purported corners on the map.

"I will not undertake to set forth in detail the contentions further than to refer to the further proceedings and opinion and decrees in that case, which are in the record, and correctly set forth the contentions of the parties as now made. It gets down to the question whether the line is where the defendants say, or is it located where the petitioners and complainants contend it is.

"Under the weight of the proof the Court is of the opinion that the Court has heretofore correctly located the boundary line, or sub-

[1]No opinion for publication.

stantially so, or at least this Court is not willing, from the proof offered on this trial, to adjudicate that the boundary line is at a different place from where the Courts have heretofore decreed that it was. . . .

"The Court in locating a boundary line, in going where the original surveyor first went when he divided these lands and followed the marked lines on the ground as he is satisfied by the weight of the proof that they are land lines, and that they are so intended. The absence of corners in this record, and especially in view of the fact that a six pole line on a different course is added to the survey made by Mr. Roy and the plat made by Mr. Roy, and another line is left out entirely and has a different course than what is called for in the deed, and in view of the fact that the Court is not sure that these trees which are shown to have been marked were marked there to indicate the line between the parties, and between other lands and some of the parties in this case, I think the safest course for the Court to follow under this proof is the course that the Court has. heretofore taken in the case against Tommie Campbell.

"The questions are made of adverse possession, that parties lived up to the old fence row as claimed by the defendants as the line in this case. The proof is not sufficient to sustain the defendants' plea of adverse possession to this land so as to make the. old fence row. the line, especially in view of what Monroe Parker says on cross-examination. He said, in substance, that the fence was not put there and he did not so understand it as establishing the line between .the parties, there was no mutuality about it, to say the least of it, the. parties owning the adjoining tracts of land did not so understand that that was establishing the boundary line between them. . The part cultivated by the defendants is a very small portion and is not made under such circumstances that the Mathis landowners would be put on notice that Mr. Parker and those tending this land for him, or other parties who owned it, were claiming up to this fence. row..

"So I am of the opinion that there has not been. sufficient recog- nition by both parties of the old fence row so as to estop the parties or any of them from claiming the boundary is now where they insist it is."

We agree with the Chancellor in his findings as above set. out. There are no known natural objects, and there is a serious controversy about the marked trees being on the true line. The complainants. tes- tify that these marks on the trees are recent marks and were not made until after a recent survey. .

We do not think the surveys are controlling, as the surveyors admitted that according to their contentions there was a vacant strip of land between the Hale tract and the Ruyle tract. Some of the Hale deeds, under which the defendants claim, call for the Blew-

ford Mathis tract, which is the Ruyle tract, thus showing that there is no vacant strip of land between these two tracts. The surveyors also admitted that they were not sure that the marked trees indicated the true line between the parties. They also admitted that they put in a six pole line on a different course in order to make the surveys otherwise tally. They also admitted that they had not surveyed out all of the original Hale tract and the original Ruyle tract. Hence we think that their surveys are not controlling.

3. We agree with the Chancellor that the suit is not barred by the limitations of seven, ten, and twenty years, as the defendant does not show that she and those through whom she claims have had open, notorious, continuous adverse possession for the required time.

"The doctrine of adverse possession is to be taken strictly, and must be made out by clear and positive proof, and not by interference; every presumption being in favor of the possession in subordination to the title of the true owner." Westmoreland v. Farmer, 7 Tenn. App., 385.

4. The Chancellor said in his opinion that he admitted in evidence the pleadings, decrees, and procedendo in order that the whole matter might be before the court, but stated that they were not conclusive. We are of the opinion that this is not reversible error, as it is shown that they were not controlling factors in his opinion.

The admission of the pictures in evidence is not controlling.

Hence this assignment is overruled.

5. It is seriously contended that the Chancellor abused his discretion in taxing the defendant with one-half the costs. The complainants have not assigned error as to the taxation of costs against them. We affirmed the decree of the Chancellor as to the location of the line and it follows that the defendant should be taxed with the costs or at least one-half the costs. This is a large record, and is out of proportion to the amount involved. There is much ill feeling between the parties, each side having gone to the place in controversy with guns. There is little excuse for all this litigation, and we think the Chancellor was correct in taxing each side with one-half the costs.

It results that the assignments of errors on the determinative issues of the case are overruled, and the decree of the Chancellor will be in all things affirmed. The costs of the appeal are decreed against the appellant. The costs that accrued in the lower court will remain as decreed by the Chancellor.

Faw, P. J., and Felts, J., concur.