## TROUTT v. TROUTT.—250 S. W. (2d) 372.

Western Section. January 16, 1952.

Petition for Certiorari denied by Supreme Court, June 7, 1952.

Grover McCormick, John Galella, and James J. Bertucci, all of Memphis, for appellant.

Abe D. Waldauer, and Ben C. Adams, Jr., both of Memphis, for appelle.

TIPTON, Sp. J. The petitioner, Frances Parker Troutt, sued the defendant, Cecil Troutt, in the Circuit Court of Shelby County, seeking a divorce from him on the grounds of cruel and inhuman treatment, the bill alleging, in addition to charges of neglect, that the defendant stayed out late at night and was keeping company with other women, and also seeking alimony and counsel fees out of the property of the defendant.

The defendant answered, denying the charges of neglect set out in the bill and also denying that he had been keeping company with other women, the answer averring that such charge was a veiled charge of adultery, that he

was not guilty thereof, and asserts the falsity of such accusations as grounds for divorce from the petitioner. In addition, the answer set up various indignities on the part of the petitioner towards him, and was filed as a cross bill seeking an absolute divorce from the petitioner.

During the course of the hearing, the petitioner was allowed to amend her bill so as to specifically charge the defendant with adultery, and after hearing the proof, the Circuit Judge granted the petitioner an absolute divorce on that ground, and awarded her alimony in solido in the sum of $7500, together with $750 counsel fees, and the defendant has appealed.

Over the objections of the petitioner, the defendant was permitted to appeal upon the execution of a $250 appeal bond, the insistence of the petitioner being that under the provisions of Code Section 9045, the bond should cover the amount of the alimony and counsel fee awarded as well as the costs, and she has filed in this Court a motion to require the defendant to give such a bond or have his appeal either dismissed or limited to the question of whether a divorce was properly granted, and this motion will be dealt with preliminary to a discussion of the merits of the case.

■■ In view of the fact, as held in Toncray v. Toncray, 123 Tenn. 476, 131 S. W. 977, 34 L. R. A., N. S., 1106, and in Williams v. Williams, 146 Tenn. 38, 236 S. W. 938, that divorce and alimony are separate and distinct and that one may be granted without the other, we think it is clear that, as to the decree of divorce, the general statutes relating to appeal bonds apply and that the defendant has an unquestioned right to appeal therefrom upon a bond for costs only, and the motion to dismiss the appeal will be denied.

■ That part of the motion seeking to limit the appeal to the question of a divorce, however, presents a serious question, in view of the provisions of the above Code section providing that where Chancery decrees are for a specific sum of money, the appeal bond shall cover the amount of the decree and costs, for it has been held in numerous cases, including Broch v. Broch, 164 Tenn. 219, 47 S. W. (2d) 84, that divorce proceedings are in their essential elements and to all intents and purposes Chancery proceedings, whether brought in the Circuit Court or in the Chancery Court. However, such proceedings are sui generis, and the procedure, being largely controlled by statute, differs in many respects from procedure in equity cases. Lingner v. Lingner, 165 Tenn. 525, 56 S. W. (2d) 749.

This seems to be a question of first impression in the State for we have been cited to no case and have been able to find none directly in point. In their excellent brief filed in support of the motion, counsel for the petitioner rely upon the cases of Chenault v. Chenault, 37 Tenn. 248, and Going v. Going, 144 Tenn. 303, 232 S. W. 443, and these seem to be the only reported cases in which the application of the statute to divorce suits has been under consideration.

In the Chenault case, the petitioner was granted a divorce, and in addition, was awarded alimony in the sum of $2700, in a Circuit Court proceeding. No appeal was taken, but the defendant sought upon writ of error to reverse that part of the decree awarding alimony, and the Court held that, in such case, the statute applied, and that unless bond to cover the judgment as well as costs was given, the writ would be dismissed.

In the Going case, a divorce and monthly alimony had previously been granted and the defendant, in order to

appeal from a decree against him for past due alimony, was required by the Chancellor, either to execute bond to cover the judgment and costs or to deposit collateral with the Clerk in lieu thereof, and in this situation, the Court held that the statute applied, and that the action of the Chancellor was proper.

These two cases are very persuasive, especially when considered in connection with the holding in the Toncray and Williams cases, supra, that alimony and divorce are separate and independent, and that there may be a divorce without alimony or alimony without a divorce. However, in both of these cases, the only thing involved was the amount of alimony, the right to a divorce and the existence of grounds therefor being conceded. We have found no case holding that alimony is separate and independent of grounds for divorce, as distinguished from the divorce itself, or that alimony may be granted unless there be grounds, and in fact, such holding would seem to be precluded by the case of White v. Bates, 89 Tenn. 570, 15 S. W. 651, which defines alimony as an allowance out of the estate of the husband made for the maintenance or sustenance of the wife after a *legal separation or divorce.*

Since the existence of grounds for divorce must be determined before alimony may be awarded or allowed to stand, we think that the provisions of a decree awarding a divorce and alimony are so inextricably interwoven as to require consideration of both upon appeal, for otherwise this Court might find itself in the anomalous situation of reversing a decree of divorce for lack of grounds, and, at the same time leaving in effect a decree for alimony in favor of a wife against her husband.

While the matter is not free of doubt, we are of the opinion that, since the defendant is entitled to appeal upon the question of a divorce upon a bond for costs

alone such appeal operates to bring the entire decree before the Court, and the motion to limit the appeal is also denied.

As stated above, the Circuit Judge granted the petitioner a divorce upon the grounds of adultery, and the first assignment of error of the defendant is directed to his action in so doing, and consideration of this assignment requires a review of the facts.

The record discloses that the petitioner and the defendant first married in 1935, and, after living together less than a year, were divorced, but re-married in 1938, after which they apparently lived together happily until the latter part of 1949, when, according to the testimony of the petitioner and her witnesses, she commenced to notice that the defendant was staying out later at night than had been his usual custom, and as a result, she began to suspect that he was paying attentions to other women. Her suspicions were aggravated when her sister-in-law, the wife of a brother of the defendant, told her of seeing the defendant riding around up town in his car on a night when he had told the petitioner that he was working, and they were in nowise alleviated by the fact that she learned that some of the excuses which he gave her for being late were false, so she determined to ascertain for herself, if possible, what the true situation was.

The defendant operated a barber shop at Grand Central Station, and on a number of occasions when the petitioner would telephone him at night, one of the other barbers or the porter would tell her that he was busy with a customer, so one night in early November, she went to the station and, upon looking into the shop, saw that the defendant was not there, but upon going to a nearby phone and calling the shop, she was told that he was busy with a customer. After waiting a while, she called again,

and upon being given the same answer, immediately went into the shop and was told that the defendant had just left.

When the defendant came home later that night, he was enraged over the petitioner checking up on him and told her to stay away from his shop, and from this time on, the relations between the parties steadily deteriorated, the defendant staying out at night more and more and the petitioner becoming more and more anxious as to his whereabouts.

In this situation, the petitioner, in late January, 1950, appealed to her brother for aid, and on two nights they drove to the station and parked, so that when the defendant left, they could follow him. On the first night, after following him for several blocks, they lost him in traffic and were never able to find him again, although they cruised around about an hour and a half looking for him, and when he came home some three hours after leaving the shop, he told petitioner that he had been working. On the second night, the defendant had left the shop before the petitioner and her brother arrived, and in this situation, she employed a private detective agency to investigate the matter for her.

Upon being employed, the agency assigned one of its investigators to shadow the defendant, and according to the testimony of the investigator, on the night he first commenced his surveillance, the defendant left his shop and drove to a cafe on Madison Avenue where a young woman got in his car, and after buying some whiskey, they drove to a tourist court, where they rented a cabin and remained therein for about two hours and a half following which the defendant carried said woman to an address on North Evergreen and let her out of the car.

On the second night following, this investigator again trailed the defendant and the same woman to this tourist court, and after seeing them enter the cabin, reported to the agency, which in turn advised the petitioner of that fact, and she and her brother immediately drove to the tourist court. However, when they got there the management refused to let them go back to the cabin where the defendant was, and the complainant and her brother did not see him there, but ascertaining in some manner that he had left, they and the investigator drove to the North Evergreen address and parked across the street. After they had been there a few minutes, the defendant and said woman drove up and were preparing to stop, apparently for the purpose of letting her out of the car, but recognizing the car in which the petitioner and her brother were sitting, the defendant drove on, letting said woman out in an adjoining block, and the defendant then drove off, while said woman walked back to the North Evergreen address and went in. Following this episode, the petitioner withdrew from the defendant, spending the night with her brother, and the parties have not lived together since.

The defendant vigorously denied that he had taken said woman to said tourist court on the two nights testified to by the investigator, or that he had taken her to the North Evergreen address as testified to by the petitioner and her brother, as well as by the investigator, his testimony being that he was at his shop working at the time these witnesses placed him at the tourist court. In this, he is corroborated by two witnesses, one of whom testified to seeing the defendant at his shop on both nights in question, and the other on one of these nights, both of these witnesses fixing the time at an hour when, if they are

correct, he could not have been at the tourist court as testified to by the petitioner's witnesses.

■■ It will be seen, therefore, that the evidence is in hopeless conflict, for if that adduced by the petitioner is to be believed, the decree passed by the trial judge was proper, for the offense of adultery may be proved by circumstances from which guilt may be reasonably inferred, and, certainly, guilt may be reasonably inferred from the circumstances related above. On the other hand, if the testimony of the defendant and his witnesses is to be accepted as true, the defendant is not guilty, because their testimony establishes for him a complete alibi, and the defense of the alibi is conclusive if clearly, certainly, and fully established; however, since it is so liable to abuse from the ease with which it may be concocted when a design exists to practice a fraud, and, even when that design does not exist, by honest mistake as to the particular hour and the lapse of time, it must be received with caution and requires great strictness and attention upon the part of the Court to avoid being misled by it. Thompson v. State, 24 Tenn. 138.

■ The trial judge saw the witnesses and heard them testify, and had the opportunity, denied to this Court, of observing their manner and demeanor while testifying, and in this situation, we think that the following quotation from the opinion of the Court in the case of Clardy v. Clardy, 23 Tenn. App. 608, 136 S. W. (2d) 526, 529, is peculiarly applicable to the instant case:

"We think the finding of the Chancellor or Trial Judge is entitled to 'great weight' when 'he saw the witnesses face to face and heard them testify' (Mathis v. Campbell, 22 Tenn. App. 40, 46, 117 S. W. (2d) 764, 767); and this is peculiarly true where (as in the instant case) the determination of the issues of

fact depends, in large measure, upon the comparative credibility of the two adversary parties to the suit.''

Under these circumstances, we cannot say that the trial judge was not warranted in believing the witnesses for petitioner and in discarding the testimony of the witnesses for the defendant, and we concur in his finding the defendant guilty, and the first assignment of error is therefore overruled.

The second assignment of error complains of the action of the Court in allowing the petitioner to amend her bill after the evidence had been completed, but we find no error in this, because the allowance of amendments is discretionary with the trial judge, and his action with respect thereto is reviewable on appeal only when there has been an abuse of discretion. Plantt v. Plantt, 28 Tenn. App. 79, 186 S. W. (2d) 338.

We find no abuse of discretion in permitting this amendment to be made, especially since the record shows that all of the rights of the defendant were amply safeguarded by the trial judge, and this assignment is also overruled.

The third assignment of error is based upon the action of the Court in dismissing the cross bill filed by the defendant, but our disposition of the first assignment of error renders discussion of this assignment unnecessary. In addition, the defendant testified that he did not want a divorce, and this assignment is overruled.

As stated above, the trial judge awarded permanent alimony in the sum of $7500, together with attorneys' fees of $750, and the fourth assignment of error is directed to this action, it being insisted that the property owned by the defendant does not justify an award in that amount.

The undisputed evidence shows that in the fall of 1949, in addition to $10,000 in Government bonds which were cashed and $5000 of the proceeds of which were received by the petitioner, and $5000 maturity value of Series "E" bonds issued in the name of both of the parties, they had on deposit over $18,000 in joint accounts in sundry banks and savings and loan associations, all of which was surreptitiously withdrawn from such accounts by the defendant in the space of about three months just prior to the filing of the bill, some of the same being re-deposited to his credit but under different initials, and being afterwards withdrawn by him. A part of this money, at least, was accumulated by the joint efforts of the parties, the petitioner having worked for a time in a business which they and a relative operated. In addition, the defendant owns an automobile and his barber shop.

The defendant admitted withdrawing this $18,000 from these accounts, but testified that he lost most of it gambling, some $13,000 of it having been lost between January 26 and February 4, the date of the service of process upon him. The evidence shows that, while the defendant had gambled some prior to the separation, his gambling was on a small scale, and the trial judge gave no credence whatever to his testimony along that line, but fixed the value of his property at $18,876.82, exclusive of said "E" bonds, the automobile, barber shop, and household furniture.

We have examined the testimony of the defendant as to his alleged gambling losses, and we concur in the conclusion of the trial judge that it is entitled to no credit and in his action in fixing the worth of the defendant at the above amount. While the alimony awarded amounts to slightly more than one-third of the value of his property, we think, under the circumstances, this amount is reason-

able and the trial judge was well warranted in so fixing it, and this assignment of error is also overruled.

 Counsel for the petitioner in their brief make application for an allowance of additional counsel fees for their services in this Court. This motion is granted, and they are allowed an additional fee of $175 for their services on appeal.

It follows, therefore, that all assignments of error are overruled, and except as modified with respect to counsel fees on appeal, the judgment of the Circuit Court is affirmed at the cost of the defendant and his surety upon his appeal bond herein.

Anderson, P. J., concurs.

Swepston, J., dissenting in part.

Swepston, J. (dissenting).

The majority opinion overrules the motion of appellee to require appellant to give an appeal bond in sufficient amount to cover the decree for a specified sum of money —alimony and counsel fees.

I am of opinion the motion should be allowed and that appellant should give an adequate bond or suffer a dismissal of his appeal.

Appellant has taken a broad appeal in equity and I agree that this brings up the whole case, if the trial judge had the authority in this equity case to allow an appeal on giving bond for costs and damages only; I agree there can be no alimony award without a decree of divorce, either a mensa et thoro or absolute; I agree that in case of a broad appeal divorce and alimony are so inextricably interwoven as to require consideration of both on appeal.

It is because of this last stated postulate that I think Code Section 9045 applies and must be given effect; this

section contains no exceptions and I think we have no power to make any, even if divorce cases are sui generis. The decree of alimony and fees is for a specific sum of money on which an execution can issue as on any other decree for a specific sum. Buchholtz v. Buchholtz, 175 Tenn. 87, 132 S. W. (2d) 208.

Where the decree is for both divorce and alimony in a specific sum of money and the husband desires to take a broad appeal, there is no reason why he should not be required either to give bond for the money decree or to take the pauper oath, if unable to give bond, as a condition to the allowance of the appeal.

If we now require appellant to amend his bond to the proper amount, or suffer a dismissal of his appeal, I am unable to see how we could find ourselves in the anomalous situation of reversing the decree as to divorce for lack of grounds and at the same time leave in effect a decree for alimony in specific sum, the appeal being broad.

The only two ways by which such a situation could arise, would be either that we grant the alternative motion of appellee to limit the appeal to the question of divorce, which obviously we should not do even if we could, or that in some other case the husband might intentionally take an appeal limited to the divorce only, leaving the decree for alimony in effect; this latter would be a difficulty of his own making and one not likely to occur, but surely, if it should occur through no fault of his or his attorney, he could have relief by injunction against the money judgment, after reversal of the decree for divorce. Scurlock v. Scurlock, 92 Tenn. 629, 22 S. W. 858.

I, therefore, respectfully dissent from the majority on this question.