# ESTELL FAIR v. DORRIS HARTMAN.—404 S.W. (2d) 535.

Eastern Section. November 30, 1965.

Certiorari Denied by Supreme Court May 16, 1966.

Thomas E. Mitchell and Tommie Sue Smith, Johnson City, for appellant, Estell Fair.

Mark C. Hicks, Jr., and Robert M. May of Jonesboro, for appellee, Dorris Hartman.

COOPER, J. This is an appeal by the defendant, Estell Fair, from a decree of the Chancery Court of Washington County cancelling 12 notes allegedly executed by the complainant, Dorris Hartman, together with any alleged indebtedness evidenced thereby, and enjoining the defendant from further attempts to collect or dispose of the notes.

The litigation between the parties was commenced by the defendant, Estell Fair, who brought suit in the Circuit Court of Washington County to collect the face

amount of the twelve notes, with interest. Mrs. Hartman then filed the present suit seeking to enjoin prosecution of the Circuit Court suit, and to secure a true statement of accounts of the parties and the cancellation of all notes in excess of any indebtedness found to be due defendant by the complainant. The complainant also charged a failure of consideration, and, in general terms, charged that the defendant was guilty of fraud.

The requested injunction against prosecution of the Circuit Court suit was granted, and the Chancery Court assumed jurisdiction of the entire controversy between the parties.

After trial by oral testimony, the Chancellor found that the notes were conceived in fraud, and were obtained under fraudulent circumstances; that the defendant was guilty of such immoral conduct it would be against public policy to enforce the collection of the notes; and that the defendant was engaged in the business of "buying and selling" notes, and was precluded from recovery of any sum on the notes because of his failure to obtain a State privilege license.

The Chancellor then entered the decree noted above, and this appeal resulted.

The record shows that the parties became acquainted in 1947, when the defendant came to the country store owned and operated by the complainant and sold her a vacuum cleaner. Each party testified that the other was interested in establishing a personal relationship and took the initiative, but, in any event, the record conclusively shows that the parties became more than mere acquaintances. In fact, it became common knowledge in

the community that Estell Fair was "courting" the widow Hartman.

Mrs. Hartman testified that the defendant represented himself as being a "single" man whose object was matrimony; however, she admitted that some 4 years after she met the defendant (and before the notes in controversy were executed), she knew that he was a party to a divorce proceeding. The relationship between the parties suffered no "adverse effects" from this revelation—Mrs. Hartman testifying that the defendant told her the divorce proceeding was just a legal mix-up and that he would get it straightened out and would marry her.

According to Mrs. Hartman the relationship between the parties never got beyond the "courting" stage. The defendant, however, after being ordered to answer fully the questions put to him during the taking of a discovery deposition, testified that he had had sexual relations with complainant on numerous occasions throughout the years he had known her, and that he was required to and did pay for these "attentions" as they occurred. In support of his testimony, the defendant produced several receipts signed by Mrs. Hartman showing payment for "personal services rendered [by her] to him." No satisfactory explanation for the receipts was made by Mrs. Hartman —thus raising some question as to the "purity" of the parties' relationship and giving foundation to the Chancellor's finding that the relationship was immoral and illicit.

■ The mere fact, however, that the parties may have had illicit sexual relations over a period of years, while against the mores of society, does not render the notes, that are the subject of this suit, illegal and uncollectible. To do so, the evidence must show that the illicit relation-

ship formed all or part of the consideration for the execution of the notes. See McMillan v. Massie's Ex'r, 233 Ky. 808, 27 S.W.(2d) 416; Baxter v. Wilburn, 172 Md. 160, 190 A. 773; Zytka v. Dmochowski, 302 Mass. 63, 18 N.E.(2d) 332, 120 A.L.R. 470; 17 C.J.S. Contracts sec. 226, p. 1172; Restatement of the Law of Contracts, Sec. 589, p 1098, where the general rule is succinctly stated as follows: 'A bargain in whole or in part for or in consideration of illicit sexual intercourse or of a promise thereof is illegal; but subject to this exception such intercourse between parties to a bargain previously or subsequently formed does not invalidate it.''

Such a showing is lacking in the present case. To the contrary, the evidence and all natural inferences therefrom shows that the notes were executed as an evidence of monies due from the complainant to the defendant.

Mrs. Hartman's explanation of the notes was that the defendant paid some bills for her store, took up some of the amount in personal purchases of gas and supplies, and that she would periodically execute a note payable to the defendant for the difference in the account.

The defendant's testimony was substantially in agreement—he adding that he had made a substantial loan to complainant on two occasions to enable her to pay outstanding debts.

The testimony of the parties was buttressed by the admission of the complainant that she sought a true statement of the account between the parties after suit to collect the notes was filed, and by exhibits in the record showing (1) a reconciliation of the account and the resulting execution of a note for $86.00 by the complainant, and (2) by a memorandum prepared by plaintiff, at the

request of the defendant, showing a sum owing to defendant in excess of the amount for which suit was brought.

Then too, we think it worthy of comment that the notes in question were not executed by the man, which is the usual case where the defense against collection of a debt or claim is based on an allegation that it arose out of an "illicit relationship," but were executed by the woman.

From the above, we have concluded that the Chancellor was in error in holding that the "illicit and immoral" relationship between the parties would defeat recovery of any amount due on the notes.

■ The Chancellor also based his decree on a finding that the notes were conceived in fraud and were obtained under fraudulent circumstances. The basis for this finding, as revealed in the Chancellor's memorandum and decree was the conduct of the defendant in misrepresenting his marital status, and his desire and capacity to marry the complainant. We see no connection between such conduct, or misrepresentation, and the execution of notes given as evidence of a debt owing by the complainant, and consequently hold that the Chancellor was in error in predicating his decree on finding that such conduct constituted fraud and would defeat recovery of any amount due on the notes.

■ The third basis for the Chancellor's decree was a finding that the defendant was engaged in the business of buying and selling notes, and was precluded from recovery by his failure to secure a State privilege license. We find no evidence in the record to support the Chancellor's finding that the defendant was engaged in the business of "buying and selling" notes. To the contrary, the undisputed evidence shows that the defendant sold

vacuum cleaners and aluminum siding, and that while he had loaned money on occasion, it was to salesmen employed by him and was to be used in payment of their expenses until sales were made. It is true defendant required a note as evidence of the advance, but it was without interest and without discount.

Having concluded, for the above reasons, that the Chancellor erred in holding that the defendant could not recover any sum that might be due on the notes, we are now faced with the uultimate question. Does the evidence show that the complainant is indebted to the defendant in any amount?

On this issue, the Chancellor stated in his memorandum opinion that the defendant had not "carried the burden of proof that complainant owed him anything, but on the contrary the proof indicates that he (the defendant) has received gasoline and groceries and * * * other valuable services * * * of a personal and illegal nature." However, the decree of the Chancellor shows that he did not predicate his decision on such a finding but pretermitted the question, stating that he entertained "some doubt whether or not the complainant actually executed all of the notes; and there [were] further questions as to whether or not the same have not already been paid."

Without recounting the evidence, the only witnesses who testified on the pretermitted issues were the parties, and their evidence was in direct conflict on many material points—thus, making the credibility of the parties a principal issue.

We have pointed out repeatedly that the Chancellor, having the opportunity to hear the witnesses testify and to observe their manner and demeanor while undergoing

examination, is in a much better position than we are to judge the weight and value of the testimony of the witnesses.

■ "[W]e think the finding of the Chancellor or Trial Judge is entitled to 'great weight' when he 'saw the witnesses face to face and heard them testify' (Mathis v. Campbell, 22 Tenn.App. 40, 46, 117 S.W. (2d) 764, 767); and this is peculiarly true where (as in the instant case) the determination of the issues of fact depends, in large measure, upon the comparative credibility of the two adversary parties to the suit." Clardy v. Clardy, 23 Tenn.App. 608, 136 S.W.(2d) 526, 529. See also Roberts v. Ray, 45 Tenn.App. 280, 322 S.W.(2d) 435.

■ This being true, we think the ends of justice can be served more accurately if we remand this cause for an express finding on the issues pretermitted by the Chancellor, and for the introduction of additional proof, if the Chancellor deems it necessary.

For the reasons above stated, the decree of the Chancellor is reversed and the cause is remanded. Costs incident to the appeal are adjudged against the complainant, Dorris Hartman. The adjudging of other costs will await the outcome of the suit.

McAmis, P.J., and Parrott, J., concur.